**William HOUSMAN, Plaintiff,**

v.

**Max BARATZ, Major General U.S. Army, Office of the Chief, Army Reserve, Defendant.**

**Civil Action No. 93–2107.**

United States District Court, D. Columbia.

Feb. 20, 1996.

---

24

James Klimaski, Washington, DC, for Plaintiff.

Charles Flynn, Asst. U.S. Atty., for Defendant.

## ORDER

URBINA, District Judge.

**Adopting the Magistrate Judge's Report and Recommendation and Granting Defendant's Motion for Summary Judgment**

In the above-captioned action, plaintiff claims that he was unlawfully separated from the Army. He contends that he was fully

qualified for continued active duty service. According to Mr. Housman, the Army had no authority to select him for non-continuation. Defendant moved for summary judgment on the basis that Mr. Housman's separation was entirely lawful. This action was referred to Magistrate Judge Attridge pursuant to 28 U.S.C. Section 636(b)(1)(B) and Local Rule 504 for a Report and Recommendation with respect to defendant's motion for summary judgment. On January 4, 1996, Magistrate Judge Attridge issued a Report and Recommendation, recommending that defendant's motion be granted. Pursuant to Local Rule 504, this court is to "make a *de novo* determination of those portions of a magistrate judge's findings and recommendations to which objection is made." Mr. Houseman has not filed any objections to the Report and Recommendation within the required time period as specified by Local Rule 504(b).

Accordingly, it is this 20th day of February 1996,

**ORDERED** that the Report and Recommendation issued by Magistrate Judge Attridge on January 4, 1996 be and is hereby adopted in its entirety; and it is

**FURTHER ORDERED** that defendant's motion for summary judgment be and is hereby **granted.**

**SO ORDERED.**

Filed Jan. 4, 1996.

### *REPORT & RECOMMENDATION*

ATTRIDGE, United States Magistrate Judge.

This matter has been referred pursuant to 28 U.S.C. § 636(b)(1)(B) for a recommendation for disposition of the defendant's motion for summary judgment [38]. In this case, the plaintiff, William H. Housman, claims that he was unlawfully separated from the Army. His basic contention is that he was fully qualified for continued active duty service and that, as such, the Army had no authority to select him for non-continuation. Compl. at 4, ¶ 19. Housman also claims that the defendant "failed to forward [his] non-

continuation to a Department of the Army Active Duty Board, but has instead tried to separate [him] directly." *Id.* at ¶ 20. The motive behind his separation, the plaintiff alleges, was the Army's desire to surreptitiously conduct a reduction-in-force. *See id.* at ¶¶ 26–31.

The government, on the other hand, asserts that as a matter of law Housman's separation was proper. The Court finds that Housman's separation was lawful, and accordingly recommends that the motion for summary judgment be granted.

### Finding of Facts

#### A. The Active Guard/Reserve Program

The plaintiff served in the United States Army Reserve Active Guard/Reserve program ("AGR" or "AGR program") as a commissioned officer from September 1985 until his separation therefrom in September 1993. As an officer in the AGR program, Housman was a reservist who served on active duty.[1] In contrast to their Regular Army counterparts who remain on active duty for indefinite terms, AGR officers must be regularly selected by a continuation board to remain on active duty.

The initial AGR tour is three years in duration. Army Regulation ("AR") 135–18 at ¶ 2–9 (June 1, 1990) (Def.'s Exh. Y). If after the initial tour a continuation board should grant an officer a subsequent tour, the officer's tour of duty becomes technically indefinite. *Id.* Despite the characterization of the duration of the subsequent tour, in actuality, continuation boards convene every five years to determine whether an AGR officer may remain on active duty. *Id.* at ¶ 4–11a.

The purpose of the AGR program is to provide highly qualified officer and enlisted personnel to support the Army National Guard and Army Reserves. *Id.* at ¶ 1–5. To objectively select the best officers to remain in the AGR, the continuation board employs a process similar to that of the promotion board described in *Doyle v. United States,* 599 F.2d 984, 990 (D.C.Cir.1979) (citations omitted):

---

**1.** Active duty soldiers serve full-time—as opposed to the traditional "weekend warriors" who serve

part-time, i.e., a few days per month or year.

Proceedings before the selection board, which are secret, involve a review of the written records of the officers. No officer or his representative may appear before the board, although an officer may write the board concerning any matters believed important to a proper consideration of his record. Because of the secrecy of selection board proceedings, there is some uncertainty concerning the mechanics of the selection process. Usually, each member of the board evaluates each officer's file independently and without discussing it with other members, and then gives the officer a numerical rating; the officers with the highest scores are selected. If, at the point where the limit on the number of promotions is reached, there are more officers with the same score than can be promoted, the board members reevaluate those officers together with those whose scores are immediately above and below. In such reevaluation they may discuss individual officers.

The regulations require that the boards recommend for promotion ... those officers determined to be "best qualified" for promotion, i.e., those to whom the selection board has given the highest rating.

Unlike the promotion board process described in *Doyle*, however, Housman's AGR continuation board was instructed to select all "fully qualified" personnel, as opposed to accepting only the "best qualified." Memo. of Instruction to January 1993 AGR Continuation Board at 2 (Def.'s Exh. I) (hereinafter, "MOI"). Under the "fully qualified" system, a situation might arise whereby all officers considered by a continuation board might be determined fully qualified and thus recommended for continuation on active duty.[2]

The members of the continuation board were instructed that the Officer Evaluation Report ("OER") is the most important document in an officer's file to determine if an officer shall be selected to continue in the AGR program. MOI, Encl. 2 at iii. An OER contains evaluations made by the officer's "rater" (direct supervisor) and "senior rater" (a rater more senior to, and in a position of greater authority than, the rater). AR 623–105 (March 31, 1992) (Def.'s Exh. AA).

The Memorandum of Instruction given to the board instructed that, of the several narrative ratings in an OER, the greatest weight is placed on the senior rater's evaluation. "The narrative, historically a key element on all evaluation reports, is particularly important in the senior rater's portion; it lends meaning and interpretation to other elements of the senior rater's evaluation, assesses the rated officer's potential for promotion, schooling or command, and may address specific aspects of performance." MOI, Encl. 2 at iv. Moreover, only the senior rater as a matter of course objectively compares the officers he or she senior-rates. After the senior rater numerically ranks a rated officer, the Department of the Army tallies how many officers have been rated higher, lower, and the same as the rated officer. AR 623–105 at ¶ 4–16(d)(5)(A) (Mar. 31, 1992) (Def.'s Exh. AA) In light of this fact, the board was also told that "[t]he senior rater evaluation is an important aspect of the OER because of the emphasis on objectivity placed thereon by the Army. . . . [O]ne of the most important responsibilities of senior raters is that of providing credible rating information which can be used in the selection of future Army leadership." MOI, Encl. 2 at v.

### B. Housman's Performance Ratings

During his eight years on active duty in the AGR program, Housman received four poor evaluations. In his first OER, Housman was ranked last out of the four officers most recently rated by Housman's senior rater. The senior rater wrote, in part, that "[Housman's] pursuit of a graduate degree although commendable, has placed demands on his available time which has effected his performance to such an extent that other personnel have been detailed to accomplish certain of his duties." Def.Exh. X (OER

---

**2.** In contrast, under the "best qualified" system, the number of promotions to be awarded is fixed in advance. After the board ranks the officers under consideration, it then recommends promotions, according to the number of promotions allowed, for the best of the fully qualified. AR 135–155 at ¶ 3–11 (June 1, 1990) (Def.Ex. Z).

from Sept. 3, 1985 to Sept. 2, 1986). Although the defendant disputes the characterization of this OER as negative, (Pl.'s Mem. Show Cause at 4), certainly a continuation board would be permitted to draw a negative inference from the senior rater's remark.

His second OER was much worse—he was fired from his job, or in Army parlance, "relieved for cause." Although he later succeeded on administrative appeal in having the senior rater portion deleted, the negative comments of the rater remained in his record and he was not reinstated in his old job. The following comments are representative of rater's evaluation which remained in Housman's performance record: "CPT Housman does not read, understand, or follow [Army Regulations] or specific guidance, relying instead on his own brand of logic." "During this rating period I continued to relieve him of responsibility and authority with the hope that he would be able to complete his remaining duties as a Mobilization Officer, Physical Security Officer, and Training Officer in a satisfactory manner." *Id.* (OER from Sept. 3, 1986 to Jan. 28, 1987).

Although his third OER rated him very highly (OER from Jan. 29, 1987 to July 12, 1987), a continuation board which convened in January 1988 apparently did not review that OER and did not select him for continuation in the program. Def.'s Exh. DD. Housman appealed the board's decision on the grounds that the second OER was under appeal, and that the very favorable, third OER had been improperly withheld from the board. *Id.* His appeal was granted, and in July 1988 another continuation board met which recommended that he be granted a follow-on AGR tour on August 25, 1988. Def.'s Exhs. EE and FF. Apparently, this board also reviewed his fourth AGR OER which also was very favorable. Def.Exh. X (OER from July 13, 1987 to June 6, 1988).

His next two OERs—spanning the seven month period from June 7, 1988 to January 1, 1989—again rated him very highly. *Id.* This spell did not last, however. In his next (seventh) OER, his senior rater ranked him the lowest of 37 officers rated. *Id.* (OER from Jan. 2, 1989 to Jan. 1, 1990). Housman did not appeal this OER until September 1993, long after the board had decided his future with the Army. Def.Exh. B. The appeal was ultimately rejected on December 8, 1993. Def.'s Exh. C.

Housman rebounded on his eighth evaluation, tying with seven other officers as the best of 61 officers rated by the senior rater. Def.Exh. X (OER from Jan 2, 1990 to Sept. 30, 1990). His ninth OER was not unfavorable. *Id.* (OER from Oct. 1, 1990 to May 27, 1991). The board did not review his tenth and last OER signed on November 22, 1992, which relieved him for cause from his position as a training and operations officer. Def. Exh. A (OER from Feb. 17 to Oct. 26, 1992). This OER was not part of his official file when the January 1993 board convened. Decl. of Allen M. Gildersleeve at 2 (Def.'s Exh. K to Def.'s Mot. to Dismiss).

Thus, the record shows that the board saw nine active duty OERs received in an six year period, three of which were unfavorable. While the board also reviewed a number of OERs for his service in the reserves (not active duty) from September 26, 1980 to February 3, 1985 which appeared to find his performance satisfactory, the board was instructed to consider the "length of time covered by the report," "the scope and degree of responsibility as outlined in the duty description," and "trends in professional competence." MOI, Encl. 2 at iv. These instructions could have led board members to conclude that Housman's more recent active duty OERs should receive greater emphasis than his older OERs which rated him for part-time reserve duty.

While the reasons for the January 1993 board's decision not to continue Housman in the AGR program are unknown, it determined that Housman should not be continued on active duty. On April 23, 1993, Housman requested reconsideration of the board's recommendation. 3d Decl. of David H. Toole at 1 (Def.'s Exh. U). In response to his request, the Army determined that the plaintiff had not "presented sufficient evidence to show that this record contained a 'material error' so as to cause the board to recommend his noncontinuation." *Id.* at 1–2.

## C. Procedural History

This cause first came before District Judge Norma Holloway Johnson on a motion for a preliminary injunction which she denied on November 11, 1993. Thereafter the government moved to dismiss the case on the grounds that Housman had not exhausted his administrative remedies. Judge Johnson denied that motion on May 27, 1994.

The case was transferred to District Judge Ricardo M. Urbina on July 1, 1994. On November 3, 1994 Judge Urbina referred the matter to this Court for resolution of discovery motions and for recommendations on dispositive motions. On January 3, 1995, Judge Urbina stayed discovery and delegated to the undersigned the authority to lift the stay if necessary to decide the defendant's summary judgment motion. The Court has determined that further discovery is not necessary in this case.[3]

To further clarify the matters at issue, on February 1, 1995 the Court ordered the parties to more fully brief the meaning of the term "fully qualified" and the defendant to submit for *in camera* review "any and all documents pertaining to the deliberative process and findings of the [continuation] board." Thereafter the government released to the plaintiff all documents submitted for *in camera* review.

Upon inspection of those documents, the Court realized that Housman possibly lacked standing to contest the defendant's decision to separate him from active duty. It appeared that by virtue of Army regulations, evaluations in Housman's record *ipso facto* disqualified him from further service in the AGR. If, at the time this suit commenced, Housman was ineligible for further service for reasons entirely apart from the those raised in this case, it would appear that he suffered no cognizable legal injury and thus would lack standing to contest the continuation board's decision. Accordingly, on May 10, 1995 the Court ordered the plaintiff to show cause why summary judgment should not be granted for the defendant on the grounds that the plaintiff was not qualified to be continued in the Army.

In response to the show cause order, the plaintiff argued that he was indeed eligible to be continued in the AGR. In its response in opposition, the government failed to respond to the substance of the plaintiff's arguments and appeared to misunderstand the direction of the Court's inquiry. Because the government chose not to join the issue (instead opting to repeat its earlier arguments contained in its motions for summary judgment and to dismiss) and because the plaintiff's assertions are colorable, the Court shall assume for purposes of deciding the instant motion for summary judgment that indeed Housman is technically qualified to be continued in the AGR.

## Conclusions of Law

### A. Standard of Review

■■■ The Court's deference to the military is at its highest "when the military, pursuant to its own regulations, effects personnel changes through the promotion or discharge process." *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C.Cir.1979). Absent a constitutional challenge by the plaintiff, when reviewing military decisions, the Court's inquiry is whether the military agency's action "conforms to the law, or is instead arbitrary, capricious or contrary to the statutes and regulations governing that agency." *Blevins v. Orr*, 721 F.2d 1419, 1421 (D.C.Cir.1983) (citation omitted).

■■■ Accordingly, the undersigned now reviews the Army's actions to determine if it acted arbitrarily and capriciously toward Housman. In doing so, the Court is mindful that summary judgment "should be granted only where there are no genuine issues of material fact, and all inferences must be viewed in a light most favorable to the non-

---

**3.** The Court is satisfied that the record is complete. Although the plaintiff seeks notes that the board members might have created during the board proceedings, the Court is satisfied that such notes do not exist, and even if they did, probably would not be helpful to resolving the issues raised in this case. 2d Decl. of Frank J.

Korenchan (Def.'s Exh. T). The plaintiff also sought to learn the continuation percentages of past boards. This information has been already produced in the record. Decl. of Allen M. Gildersleeve (Def.'s Exh. K to Def.'s Mot. to Dismiss).

moving party." *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994). As the non-moving party, the plaintiff's burden is "to set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### B. Were Evaluations Improperly Viewed By the Board?

Housman claims that the continuation board should not have seen his negative, seventh active-duty OER (spanning the period of January 2, 1989 to January 1, 1990) because this report lacked credibility and "is under appeal." Compl. at ¶¶ 36–37. Of course, what Housman omits in the text of his complaint (but not in his exhibits) is that he did not appeal this OER until September 1993, nine months after the board had decided to separate him. Compl. (Exh. 6); Def. Exh. B.

■ Since Army Regulation 623–105, Chapter 9 places the burden on the soldier to bring to the Army's attention any error in his record, the Court finds that the Army did not err in allowing this OER, which was not under appeal at the time, to be considered by the continuation board. Def.'s Exh. AA; 2d Decl. of Frank J. Korenchan (Def.'s Exh. T).[4]

Apparently, Housman had no OERs under appeal when the board met. Decl. of Allen M. Gildersleeve at 2 (Def.'s Exh. K to Def.'s Mot. to Dismiss). Nevertheless, even if hypothetically the board had seen an OER under appeal, it would not constitute error. *See* Richard C. Jelen letter (May 11, 1993) (Def.'s Exh. J to Def.'s Mot. to Dismiss); 2d Decl. of Frank J. Korenchan at ¶ 5 (Def.'s Exh. T).

### C. Was Housman "Fully Qualified?"

The continuation board was charged with the responsibility to select all "fully qualified" officers. MOI at 2 (Def.'s Exh. I). Housman believes he was fully qualified and that the board, therefore, erred by not selecting him. The defendant proffers that the

term "fully qualified" as used in this case is defined in AR 135–155, paragraph 3–11(a). It provides, in part:

> *Fully Qualified.* To be fully qualified for selection, an officer must be—
>
> (1) In the zone of consideration.
>
> (2) On [active duty] or participating satisfactorily in Reserve training.
>
> **(3) Qualified physically, morally, and professionally.**

·    ·    ·    ·    ·

Def.'s Exh. Z (emphasis added). The defendant concedes that Housman fails to meet the definition only as to his professional qualification. Transcript of Mar. 2, 1995 Status Hrng. at 26.

Housman disputes that AR 135–155 defines the term, pointing out that the regulation is limited to providing "policy and procedures **for the selection and promotion of commissioned officers** . . . of the U.S. Army Reserve." AR 135–55 at 1 (Def.'s Exh. Z). Housman contends instead that the Court must look to AR 135–18 for guidance since its purpose is to establish policies and procedures for "obtaining, administering, and separating . . . U.S. Army Reserve personnel serving as members of the AGR Program." (Def.'s Exh. Y).

■ The Court agrees with the plaintiff that AR 135–18 controls the determination of whether or not Housman was lawfully separated. Nevertheless, for the reasons set forth below, the Court cannot accept Housman's conclusion that the defendant was not entitled to separate him.

AR 135–18 provides the following instruction:

> **2–4. Qualifications for subsequent duty in the AGR Program**
>
> a. After initially entering or reentering the AGR Program, and while serving on [active duty] . . . , a soldier **may be considered for continuation and subsequent**

---

4. Although his appeal was denied on December 8, 1993, (Def.'s Exh. C), should Housman's successfully reappeal this OER, he may then request a stand-by board to reconsider the decision of the continuation board which non-selected him. 2d Decl. of Frank J. Korenchan at 3–4 (Def.'s Exh. T).

duty in the AGR Program based on the needs of the [Army].

b. A soldier who has been selected for subsequent duty in the AGR Program must possess the qualifications prescribed in table 2–4, not be disqualified under tables 2–5 or 2–6,[5] and meet any additional requirements prescribed by . . . the [Chief of the Army Reserve per paragraph 1–6e(3) ].

(emphasis added)

Paragraph 1–6e(3) provides that the Chief of the Army Reserve will "[u]nder overall Army policy, develop and implement policies and procedures for efficient management and effective use of the [Army Reserve ("USAR") ] AGR personnel force. Such policies will be within the guidelines of the program prescribed by this regulation."

Furthermore, the regulation specifically authorizes the defendant to conduct continuation boards:

**4–11. Retention and continuation in the program**

The [U.S. Army Reserve] will have a continuing need to retain fully qualified soldiers in the program. Eligible soldiers should be encouraged to remain in AGR service.

a. Boards will be convened at least annually by [the Chief of the Army Reserve] to consider personnel in the third year of their initial tour of duty, and every fifth year thereafter, for continuation in the AGR Program. **[The Chief of the Army Reserve] will publish instructions covering the conduct of the boards. . . .**

b. AGR soldiers who are not disqualified per table 2–5, **and satisfy board considerations required by [the Chief of the Army Reserve]** will be continued on [active duty] under paragraph 2–9 if an appropriate assignment or attachment is available. The period of duty will commence immediately on expiration of the current period of AGR duty.

(emphasis added).

As the preceding portions of AR 135–18 amply demonstrate, the Chief of the Army Reserve has been granted considerable authority to decide who should serve in the AGR program. Thus the remaining issues are whether the Chief of the Army Reserve's published instructions to the board exceeded his authority under AR 135–18, and, if not, whether the board violated its instructions by recommending Housman's separation.

■ In this case, the defendant published instructions for the continuation board in accordance with paragraphs 1–6e(3) and 4–11. MOI at ¶ 3 (Def.'s Exh. I). In his instructions to the President of the Board, the Chief of the Army Reserve gave the following guidance:

b. Although the [Army Reserve] AGR program is programmed for reductions in conjunction with the overall downsizing of the Army, the Board specifically *will not conduct* any type of reduction in force. Should quantitative reductions become necessary, other boards/methods will be used.

c. In determining whether a soldier is qualified to continue to serve in the USAR AGR program, the Board must satisfy itself that the soldier has consistently demonstrated quality performance and Army Reserve proficiency for continuation in the USAR AGR Program and is qualified physically, morally and professionally. *The method of selection will be the fully qualified method.*

*Id.* at 2 (emphasis in original).

After the President of the Board received these instructions, he then gave copies of the MOI, as well as conforming remarks, to the board members.[6] Suggested Opening Re-

---

5. It is conceded that Housman was qualified according to tables 2–4 and 2–5. Furthermore, as mentioned above, the government has chosen not to pursue the argument that Housman was not qualified under Table 2–6.

6. The plaintiff disputes the fact that the MOI or oral instructions were given. Pl.'s Stmt. of Material Facts at 1–4. He reasons that since he was, after all, "fully qualified" yet not selected, the board, therefore, must not have received the instructions or else ignored them. Because David H. Toole stated the instructions were indeed given, (Def.'s Exh. M), the burden shifts to the plaintiff to produce contrary facts. He cannot rely on a mere denial. Local Rule 108(h).

marks at 1 (Def.'s Exh. J); Transcript of Mar. 2, 1995 status hearing at 3. He stressed that "this board has not been convened to conduct any type of an AGR reduction in force." *Id.* at 3. The plaintiff has not alleged that the opening remarks or MOI were *ultra vires,* nor is there anything in the record that would cause the Court to believe that they violated Army Regulation 135–18.

Therefore, the Court turns to the second step of the inquiry: to determine if the board disregarded its instructions. In other words, did the board fail to satisfy itself that Housman had not consistently demonstrated quality performance or was not qualified physically, morally and professionally?

■ The Court concludes it did not. The board had virtually unfettered discretion in conducting its evaluation of Housman. The board members—all military personnel intimately familiar with the demands and customs of military service—should be sufficiently able to determine if a soldier is "fully qualified" to continue in the program. Maybe if Housman's record was spotless, the Court would opine differently. The fact that Housman's performance record was less than stellar, leads the Court to the inescapable conclusion that the board was satisfied that Housman was not qualified to be continued on active duty.[7]

There are good reasons why the Court must defer to the judgment of military boards. While instructions given to the boards can be reviewed to determine if they are arbitrary and capricious, the thought processes of the individual board members are virtually unreviewable. Furthermore, Congress specifically approved of and authorized the continuation board concept in the National Defense Authorization Act for Fiscal Year 1995, codified at 10 U.S.C.

§ 14101(b). Finally, the Court is unaware of, and the plaintiff has not pointed to, any decision striking down the action of a military promotion board—which uses the same secretive and unreviewable techniques as a continuation board—as arbitrary and capricious.

There is absolutely no evidence that the board was a rogue board: its selection percentages were comparable to past boards. Decl. of Allen M. Gildersleeve (Def.'s Exh. K to Def.'s Mot. to Dismiss). Nor is there any evidence (except for Housman's *ipse dixit*) that he was "fully qualified." The Court is convinced that "fully qualified" is less of a term of art like "probable cause" and more likely a term to be taken at face value. If the board does not think he is qualified, that is the end of the inquiry (unless of course, the board saw records it was not supposed to see, or the board was improperly instructed—mistakes that did not happen here). As the defendant points out, if—as Housman contends—soldiers are fully qualified by virtue of meeting the standards established in AR 135–18's tables, there would be no need for a continuation board. But, of course, the use of continuation boards is specifically authorized.[8]

### D. Was the Separation Authority Proper?

Housman also asserts that the defendant "failed to forward [his] non-continuation to a Department of the Army Active Duty Board, but has instead tried to separate [him] directly." Compl. at ¶ 20. In support of this contention, the plaintiff attached to the complaint a 1969 edition of AR 635–100.

■ As might be suspected, there have been changes to the regulations over the past quarter century, and indeed now paragraph

---

7. Housman would have the Court believe that the continuation board acted as a *de facto* reduction-in-force (RIF) board despite a the enormous amount of evidence to the contrary. Even if this charge were true, Housman has not shown that the Chief of the Army Reserve did not have the authority to use continuation boards to reduce the size of the force. To the contrary, AR 135–18 appears to give him such authority.

8. Housman has asserted that the continuation board did not consider his entire record. Pl.'s Stmt. of Material Facts at 1. This assertion is based on the fact that defendant's exhibit E was missing the back sides of several evaluations. Because the defendant was able to produce the back sides of the OERs, the Court accepts the government's contention that this was a simple clerical mistake caused during the assembling of the exhibit, and that the board actually saw the whole record.

348d of the regulation, dated July 25, 1991, specifically authorizes the Chief of the Army Reserve to release personnel from active duty.[9] Def.'s Exh. D. Accordingly, the plaintiff cannot prevail on this point.

## Recommendation

The crux of this case is whether an Army continuation board arbitrarily and capriciously recommended that the plaintiff be separated. The Court finds that the board had ample evidence upon which to come to its conclusion. Contrary to the plaintiff's assertions, there was no material error contained in the plaintiff's record which the board reviewed.

Therefore, upon consideration of the defendant's motion for summary judgment [38], the opposition and supplement thereto, the reply, and the entire record, and in accordance with the foregoing reasoning, it is this 3rd day of January 1996.

**RECOMMENDED** that the defendant's motion for summary judgment [38] be **GRANTED.**

Failure to file timely objections to the findings and recommendations set forth in this report in accordance with Rule 504(b) for the United States District Court for the District of Columbia may waive your right of appeal from an order of the District Court adopting such findings and recommendations. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

9. There was some discussion as to whether this regulation was properly authenticated. Pl.'s Stmt. of Material Facts at 1. The defendant has convincingly shown that it was. Def.'s Exh. K.