Jamil EL–BANNA, et al., Petitioners

v.

George W. BUSH, President of the United States, et al., Respondents.

Omar Deghayes, et al., Petitioners

v.

George W. Bush, President of the United States, et al., Respondents.

Ahamed Abdul Aziz, et al., Petitioners

v.

George W. Bush, President of the United States, et al., Respondents.

Ahmed Abu Imran, et al., Petitioners

v.

George W. Bush, President of the United States, et al., Respondents.

Benjamin Mohammed Al Habashi, et al., Petitioners

v.

George W. Bush, President of the United States, et al., Respondents.

Nos. CIV.A.04–1144 RWR, CIV.A. 04–2215 RMC, CIV.A.05–0492 JR, CIV.A.05–0764 CKK, CIV.A.05–0765 EGS.

United States District Court, District of Columbia.

Sept. 28, 2005.

Douglas James Behr, George Brent Mickum, IV, Keller & Heckman, LLP, Washington, DC, for Petitioners.

James W. Beane, Jr., Washington, DC, Stacey Danielle Becker, Julia Symon deKluiver, Clifford Chance US, LLP, Washington, DC, James M. Hosking, Christopher Land, Clifford Chance U.S. LLP, New York, NY, Wesley Powell, Hunton & Williams LLP, New York, NY, for Petitioners.

Anna Cayton–Holland, Denver, CO, Agnieszka M. Fryszman, Matthew K. Handley, Michael Hausfeld, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, John R. Holland, Law Offices of John Holland, Denver, CO, Clive A. Stafford Smith, New Orleans, LA, for Petitioners.

James W. Beane, Jr., Washington, DC, for Petitioners.

James W. Beane, Jr., Washington, DC, Clive A. Stafford Smith, New Orleans, LA, for Petitioners.

Terry Marcus Henry, U.S. Department of Justice, Civil Division, Washington, DC, Preeya M. Noronha, U.S. Department of Justice, Washington, DC, Robert J. Katerberg, U.S. Department of Justice, Washington, DC, for Respondents.

## MEMORANDUM AND ORDER

OBERDORFER, District Judge.

Counsel for petitioners in the above-captioned cases, each petitioner a detainee at Guantanamo Bay, Cuba, have filed virtually identical motions for preliminary injunctions on petitioners' behalf.[1] The motions request judicial intervention in the conditions of the petitioners' detention, particularly with regard to a hunger strike now in progress at Guantanamo Bay. These motions have been assigned to the

---

1. Counsel have filed what appear to be identical motions on behalf of the petitioners in four other cases: *Sliti v. Bush*, No. 05–cv–0429 (D.D.C.) [docket # 25], *Kabir v. Bush*, No. 05–cv–0431 [docket # 16], *Hamlily v.* *Bush*, No. 05–cv–0763 [docket # 14], and *Hamamy v. Bush*, No. 05–cv–0766 [docket # 12]. These motions are not addressed by the instant Memorandum and Order.

undersigned pursuant to established court procedures.[2]

Movants' preliminary injunction motions allege the abuse of the Qur'an and other infringements on religious liberty, inadequate sanitation including inadequate opportunity to bathe, inadequate opportunity to exercise, inadequate opportunity for exposure to daylight, poor quality food and drinking water, inadequate access to educational materials, excessively air-conditioned cells, and the use of loud fans to limit communications. In addition, the motions allege, with regard to detainees other than these movants, past and ongoing physical abuse amounting to torture and poor and withheld medical treatment.

In *O.K. v. Bush*, 377 F.Supp.2d 102 (D.D.C. July 12, 2005), Judge John Bates recently decided a similar motion for preliminary injunction. As Judge Bates stated, our court of appeals "recently emphasized [that] a 'preliminary injunction is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion.'" *Id.* at 111 (quoting *Cobell v. Norton*, 391 F.3d 251, 258 (D.C.Cir.2004)). Judge Bates further noted the requirement that "a plaintiff demonstrate a likelihood of injury in the imminent future in order to secure an injunction," *id.* at 113 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 110, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)), and observed that that requirement "takes on added importance in a case where the Court is asked to regulate the conduct of the Executive in the theater of war," *id.* (citing *D.L.S. v. Utah*, 374 F.3d 971, 973 (10th Cir.2004)). Judge

Bates concluded that, "[a]bsent a persuasive claim that the conditions of confinement at Guantanamo are so severe that they present an imminent threat to petitioner's health, the Court will not insert itself into the day-to-day operations of Guantanamo." *Id.* at 114.

■ I am persuaded that the principles that guided Judge Bates' decision provide a sound basis for resolution of the instant preliminary injunction motions. The movants here, like the movant in the *O.K.* case, have failed to demonstrate an imminent threat to their health. Movants' complaints about physical abuse and poor and withheld medical treatment fail because the complaints pertain only to detainees other than movants. Movants' other conditions of confinement complaints fail because they do not describe conditions so severe as to constitute an imminent threat to movants' health.

There remain for consideration the movants' allegations about the hunger strike. They allege that during an earlier hunger strike certain Guantanamo Bay medical personnel stated that if a hunger-striking detainee provided written authorization, medical personnel would refrain from using heroic means to preserve the striking detainees' health and, ultimately, life.

In response, respondents have filed a subsequent declaration made under penalty of perjury by United States Army Major General Jay W. Hood, commander of the Joint Task Force—Guantanamo ("JTF"). *See* Resp.'s Br. Ex. A: Declaration of MG Jay W. Hood (dated Sept. 9,

---

**2.** *See* Order of Sept. 27, 2005, *El–Banna v. Bush*, No. 04–cv–1144 [docket # 154]; Order of Sept. 26, 2005, *Deghayes v. Bush*, No. 04–cv–2215 [docket # 27]; Order of Sept. 23, 2005, *Aziz v. Bush*, No. 05–cv–0492 [docket # 23] (order refers to notice of filing [docket # 21] because the motion itself [docket # 24] had not yet been cleared for public filing); Order of Sept. 21, 2005, *Imran v. Bush*, No. 05–cv–0764 [docket # 15]; Order of Sept. 23, 2005, *Habashi v. Bush*, No. 05–cv–0765 [docket # 14].

2005) (copy attached). The general states that he is "responsible for all aspects of detainee operations at Guantanamo Bay, Cuba to include medical care and ... the operation of the detention hospital that provides medical care to the detainees being held at Guantanamo." *Id.* ¶ 1. Most significantly, he also commits that "[c]onsistent with Department of Defense policy the JTF will prevent unnecessary loss of life by detainees through standard medical intervention, *including involuntary medical intervention when necessary to overcome a detainee's desire to commit suicide.*" *Id* ¶ 2 (emphasis added).

■ The foregoing considered, movants have not carried their burden of proving an imminent threat by respondents to the health and life of the hunger-striking movants.[3]

Accordingly, it is this 28th day of September, 2005 hereby

ORDERED: that movants' Motions for a Preliminary Injunction Concerning Conditions of Confinement in *El–Banna v. Bush,* No. 04–cv–1144 [docket # 153], *Deghayes v. Bush,* No. 04–cv–2215 [docket # 26], *Aziz v. Bush,* No. 05–cv–0492 [docket # 24], *Imran v. Bush,* No. 05–cv–0764 [docket # 16], and *Habashi v. Bush,* No. 05–cv–0765 [docket # 15] are DENIED, without prejudice.

3. Movants' request for an evidentiary hearing and oral argument is denied. Even assuming the truth of all of movants' allegations, movants have failed to demonstrate an imminent threat to movants' health. Regarding movants' hunger-strike claims, movants have specifically alleged only that respondents' representatives threatened non-intervention with regard to a past hunger strike. Movants have not offered specific allegations (but, instead, have offered only general expressions of doubt) to dispute General Hood's subsequent commitment, provided in the context of the current hunger strike, to use "involuntary

**Exhibit A**

## DECLARATION OF MG JAY W. HOOD

Pursuant to 28 U.S.C. § 1746, I, JAY W. HOOD, hereby declare under penalty of perjury under the laws of the United States that to the best of my knowledge, information, and belief, the following is true, accurate, and correct:

1. I am a Major General in the United States Army, with 30 years of active duty service. I currently serve as Commander, Joint Task Force–Guantanamo, Guantanamo Bay, Cuba (JTF–GTMO). I have served in that position since March 2004. JTF–GTMO conducts detention and interrogation operations in support of the Global War on Terrorism, coordinates and implements detainee screening operations and supports law enforcement and war crimes investigations. Our detention mission is conducted in a humane manner that protects the security of both detainees and JTF personnel at GTMO. In my capacity as Commander, I am responsible for all aspects of detainee operations at Guantanamo Bay, Cuba to include medical care and I oversee the operation of the detention hospital that provides medical care to the detainees being held at Guantanamo. Currently, there are in excess of 500 detainees being held at Guantanamo Bay, Cuba.

medical intervention when necessary to overcome a detainee's desire to commit suicide." Declaration of MG Jay W. Hood ¶ 2. As in the summary judgement context, movants' generalized statements of doubt about General Hood's commitment do not effectively traverse his specific commitment. *Cf.* Fed. R.Civ.P. 56(e) (noting in the summary judgment context the insufficiency of "mere allegations or denials" and requiring instead a response that "set[s] forth specific facts showing that there is a genuine issue" requiring resolution by fact-finding).

2.  Consistent with Department of Defense policy the JTF will prevent unnecessary loss of life of detainees through standard medical intervention, including involuntary medical intervention when necessary to overcome a detainee's desire to commit suicide, using means that are clinically appropriate. Although the principles of autonomy and consent for medical treatment are well established in medical care and are applicable to detainees, there are also clearly recognized exceptions in areas such as communicable disease treatment, occupational health, and prison medical care, especially to prevent unnecessary loss of life.

3.  The U.S. Department of Justice regulations for the Bureau of Prisons (Title 28 of the Code of Federal Regulations, Section 549.65) establishes explicit procedures for involuntary feeding of prison inmates engaged in hunger strikes when necessary to prevent an imminent threat of death or permanent impairment. That program was used as the model for Department of Defense detainee program operations in this area discussed in this declaration.

4.  In keeping with the above guidance, it is JTF–GTMO's standard operating procedure (as approved by the Deputy Assistant Secretary of Defense—Detainee Affairs and the Assistant Secretary of Defense—Health Affairs) to avert death from hunger strikes and failure to drink, as well as to monitor the health status of detainees who are fasting voluntarily. Every attempt will be made to allow detainees to remain autonomous up to the point where failure to eat or drink might threaten their life or health.

5.  Security forces at JTF–GTMO monitor each detainee's daily intake of meals and water. If a detainee has missed nine consecutive meals or has declined food and water for more than two days, personnel at the detention hospital are notified and a medical evaluation of the detainee is conducted. This evaluation includes a complete medical records review, as well as physical and mental health examinations and testing. Medical personnel on a regular and frequent basis then monitor the detainee.

6.  If medical personnel have reason to believe that the continuation of a voluntary fast or hunger strike could endanger a detainee's health or life, the detainee will be admitted to the detention hospital. His food and water intake are again monitored, and his medical condition is continuously observed. Medical Staff counsel the detainee regarding the risks associated with not following our medical advice directing him to eat life-sustaining food and to drink fluids. We also explain the alternatives available to him, including oral food and fluid, oral rehydration solutions, oral nutritional supplements and intravenous hydration.

7.  If the detainee elects to voluntarily begin eating/drinking, the detention hospital follows specific protocols designed to ensure the detainee's health and well being as he increases his caloric and liquid intake.

8.  If the detainee continues to refuse to eat and/or drink and if a medical officer determines that the detainee's health or life might be threatened if treatment is not initiated immediately, consideration is given to involuntary medical treatment of the detainee. Interventions of an involuntary manner are deferred, however, until there is a clear medical determination by the attending physician that continued fasting would impair the health seriously or jeopardize the life of a detainee. When, after reasonable efforts, or in an emergency preventing such efforts, a medical necessity for immediate treatment of a life or health threatening situation is determined

by the physician to exist, I will authorize doctors to administer treatment without the consent of the detainee. This can include the use of intravenous means or a feeding tube. No request for such authorization has been denied, and where sought, such authorizations have been provided in a timely manner without exacerbating the medical situation of a detainee.

I declare under penalty of perjury that the foregoing is true and correct.