**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **ALAN MATTHEW SPADONE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Civil Action No. 11-1601 (RWR)** |
| | ) |
| **JOHN M. MCHUGH,** | ) |
| | ) |
| **Defendant.** | ) |
_____ )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alan Spadone filed this complaint against

Secretary of the Army John McHugh, alleging that the Secretary's

actions, including his order disenrolling Spadone from the United

States Military Academy ("West Point") and directing Spadone to

serve as an enlisted solider in the Army, violated the

Administrative Procedures Act ("APA"), 5 U.S.C. § 702 et seq.,

the Due Process Clause of the Fifth Amendment, and the

Establishment Clause of the First Amendment, and unjustly

enriched the Army. Spadone has moved for a preliminary

injunction directing the Secretary to re-enroll Spadone in West

Point to give Spadone the opportunity to earn a degree and an

officer's commission in the Army by May 2012. (Pl.'s Mem. in

Supp. of Mot. for Preliminary Injunction ("Pl.'s Mem.") at 4.)

The Secretary opposes.[1] Because Spadone has not shown

_____

[1] The Secretary has separately moved to dismiss the
complaint. His opposition to Spadone's motion for a preliminary
injunction incorporates portions of submissions accompanying the

irreparable harm or a likelihood of success on the merits, his motion will be denied.[2]

## BACKGROUND

In July 2007, Spadone enrolled at West Point. (Compl. ¶ 13.) In February 2009, a West Point faculty member granted Spadone permission to apply to study abroad at Pembroke College at the University of Cambridge. In July 2009, Spadone learned that he had been accepted by the study abroad program. (Id. ¶¶ 16-17.) Spadone asked West Point's Dean to allow him to enroll in the program, but Spadone knew he would resign before starting his third year of study if the Dean denied the request. Beginning a third year of study triggers a cadet's obligation to provide five years of active duty military service and three years of service in the reserves. (Id. ¶¶ 19-24, 92.)

The Dean denied Spadone's request in September 2009. However, the Dean told Spadone that the decision could be reconsidered if outside funds were available to pay for the program. (Id. ¶¶ 27, 29.) On October 1, 2009, the Dean was

motion to dismiss.

[2] The parties do not present the type of factual disputes that would require a hearing. A court may deny a plaintiff's application for a preliminary injunction without first providing a hearing on the merits when the record demonstrates a lack of right to relief. Cornish v. Dudas, 540 F. Supp. 2d 61, 64 (D.D.C. 2008) (citing Smith v. Harvey, Civil Action No. 06-1117 (RWR), 2006 WL 2025026, at *2 (D.D.C. July 17, 2006)); Local Civil Rule 65.1(d) (a court may decide a motion for preliminary injunction on the papers without first holding a hearing).

informed that Spadone raised $25,000 from private donors, enough to fund his enrollment in the program. However, the next day, the Dean still denied Spadone's request to enroll in the program despite the funding. (Id. ¶¶ 30-32.) By then, Spadone, having anticipated enrollment approval, had started his third year of study at West Point. (Id. ¶¶ 23-24, 26.)

Spadone was enrolled at that time in a course titled EN 302, Advanced Composition. He submitted an essay in that course in late October that West Point's honor committee investigated on suspicion of plagiarism, which is a violation the West Point honor code. (Compl. ¶ 33; Def.'s Stmt. of Facts in Supp. of Mot. to Dismiss or in the Alternative for Summ. J. ("Def.'s Stmt.") ¶¶ 6, 13.) On November 18, 2009, Spadone admitted that he plagiarized in violation of the honor code. (Def.'s Stmt. ¶ 13.) On November 19, 2009, Spadone submitted another essay for EN 302 that the course's professor suspected involved dishonorable documentation. Spadone told her he had been merely careless, and he later signed two statements denying that his November 19 essay violated the honor code. (Def.'s Stmt. ¶¶ 15-16, 20; A.R. 403-404.)

In February 2010, West Point's Commandant for Honor Matters referred Spadone to an Honor Investigative Hearing for three charges of violating the honor code: one charge of plagiarizing in the October paper, one charge of plagiarizing in the

November 19th paper, and one charge of lying to his professor about the November 19th paper. (Def.'s Stmt. ¶ 25.) At an Honors Investigative Board hearing held on March 8, 2010, Spadone pled guilty to plagiarizing in the October essay. In addition, the Honors Investigative Board determined that the allegations of plagiarizing in the November 19th essay were supported by a preponderance of the evidence but the allegation of lying was not. (Compl. ¶¶ 42, 44; Def.'s Stmt. ¶¶ 31-32.)

In April 2010, Spadone was questioned about his honor code violations by a panel composed of the Commandant of Cadets, a Command Sergeant Major, five cadets from the Cadet Honor Committee, and Spadone's Tactical Officer. (Compl. ¶ 46.) According to Spadone, the Commandant of Cadets indicated during the hearing that Spadone had not properly shown contrition or accepted responsibility for the Honor Code violations, and ordered Spadone to stand with his body rigid in a military posture and to read aloud the "Cadet's Prayer."[3] (Id. ¶¶ 47-48.) In May 2010, West Point's Superintendent decided to disenroll Spadone from West Point for the summer of 2010, delay his graduation by one year, place Spadone in a "suspended separation status" until graduation, and enroll Spadone in the Honor

---

[3] The prayer says in part, "O God, our Father, Thou Searcher of human hearts, help us to draw near to Thee in sincerity and truth. May our religion be filled with gladness and may our worship of Thee be natural. . . . Help us . . . in doing our duty to Thee[.]" (Compl. ¶ 47.)

Mentorship Program ("HMP") under specific conditions. (Compl. ¶ 51; Def.'s Stmt. ¶ 41.)

According to Spadone, he was required to draft two written journal entries each week as part of the HMP. (Compl. ¶¶ 59-61.) In October 2010, the Special Assistant to the Commandant for Honor Matters recommended vacating the suspension of Spadone's separation from West Point because Spadone had not submitted journals that met the requirements of the HMP. (Id. ¶ 65.) In November 2010, West Point's Superintendent issued a memorandum recommending separating Spadone from West Point for failing to successfully complete his HMP. (Id. ¶ 71.) In December 2010, Spadone was suspended from West Point and placed on an authorized leave of absence without pay pending the Army's final decision on his disenrollment. (Id. ¶ 75.) In August 2011, Spadone learned that the Secretary signed orders disenrolling Spadone from West Point and ordering Spadone to report in October 2011 for two years on active duty as an enlisted soldier. (Id. ¶¶ 82, 86.)

Spadone filed the complaint in this action in September 2011 challenging the Secretary's actions as arbitrary, capricious and in violation of due process. He also alleged that ordering him to read aloud the Cadet's Prayer violated the Establishment Clause of the First Amendment, and that the delay in denying his study abroad enrollment unjustly enriched the Army by triggering his military service obligation. In addition to back pay, his

complaint seeks full reinstatement at West Point and expungement of all records of his HMP failure, or, in the alternative, an order requiring the Secretary to discharge Spadone from West Point without requiring a period of enlisted military service. (Compl. ¶ 150.)[4]

Spadone has now moved for a preliminary injunction ordering the Secretary to re-enroll him at West Point pending the outcome of this case. The Secretary opposes Spadone's motion,[5] but Spadone has not filed any reply.

<u>DISCUSSION</u>

A preliminary injunction is an extraordinary remedy. <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997). A preliminary injunction interfering with the government's decision to terminate federal service should be limited to "genuinely extraordinary situation[s]." <u>Sampson v. Murray</u>, 415 U.S. 61

---

[4] The Secretary has changed Spadone's reporting date for basic training from October 10, 2011 to April 23, 2012.

[5] The Secretary argues, and Spadone has not refuted, that Spadone's reenrollment in the military is not even a justiciable form of relief. (Def.'s Opp'n at 19-21.) The D.C Circuit has held that, while a request to review the reasonableness of a decision of the military board of correction is justiciable, a request to force the military to retroactively promote a serviceman is not justiciable. See <u>Piersall v. Winter</u>, 435 F.3d 319, 322 (D.C. Cir. 2006) (citing <u>Kreis v. Sec'y of the Air Force</u>, 866 F.2d 1508, 1511 (1989)); <u>see</u> <u>also</u> <u>Randall v. United States</u>, 95 F.3d 339, 348 (4th Cir. 1996) (stating that "[t]he district court would have no authority to order the Secretary of the Army to promote Plaintiff to Lieutenant Colonel"). Whether or not Spadone's request is justiciable, Spadone has not made a showing sufficient to warrant injunctive relief.

(1974); see also Penland v. Mabus, 643 F. Supp. 2d 14, 21 (D.D.C. 2009). A plaintiff carries the burden of persuasion by a clear showing 1) of a substantial likelihood of success on the merits, 2) of irreparable injury if the injunction is not issued, 3) that the injunction would not substantially injure other interested parties, and 4) that the injunction is in the public interest. Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004). "The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor." In re: Navy Chaplaincy, 516 F. Supp. 2d 119, 122 (D.D.C. 2007) (citing CSX Transp., Inc. v. Williams, 406 F.3d 667 (D.C. Cir. 2005)); see Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291-92 (D.C. Cir. 2009).[6] In general, courts tread "lightly on the military domain, with

---

[6] Two judges on the Davis panel, see id. at 1295-96 (Kavanaugh, J. and Henderson, J., concurring), though, questioned the continuing vitality of, but did not squarely jettison, this sliding scale approach in light of dictum in Winter v. Nat'l Resources Def. Council, Inc., 555 U.S. 7, 20 (2008) (listing the four factors a plaintiff must establish, but neither invoking nor rejecting the sliding scale method). The most that can be said of what Winter decided regarding standards for securing injunctive relief is that a plaintiff must demonstrate that irreparable injury is "likely," not just "possible," 555 U.S. at 22, and that the balance of equities and the public interest were sufficient in that case to weigh against injunctive relief. 555 U.S. at 32; see also Sherley v. Sebelius, 644 F.3d 388, 392-393 (D.C. Cir. 2011) (opinion by Ginsburg, J., joined by Griffith, J.) (stating that "[l]ike our colleagues [in Davis], we read Winter at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction'").

scrupulous regard for the power and authority of the military establishment to govern its own affairs within the broad confines of constitutional due process." Friedberg v. Resor, 453 F.2d 935, 937 (2d Cir. 1971). In addition, Spadone seeks more than a prohibitive injunction that would maintain the status quo; he seeks a mandatory injunction that would alter the status quo. "In this Circuit, 'the power to issue a preliminary injunction, especially a mandatory one, should be sparingly exercised.'" Mylan Pharms., Inc. v. Shalala, 81 F. Supp. 2d 30, 36 (D.D.C. 2000) (quoting Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969)).

I.   IRREPARABLE INJURY

A showing of irreparable injury traditionally "is a threshold requirement for a preliminary injunction." City of Moundridge v. Exxon Mobil Corp., 429 F. Supp. 2d 117, 127 (D.D.C. 2006). "Irreparable harm is an imminent injury that is both great and certain, and that legal remedies cannot repair." Id. (citing Wis. Gas Co. v. Fed. Energy Regulatory Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985)).

> The key word in this consideration is irreparable.
> Mere injuries, however substantial, in terms of money,
> time and energy necessarily expended in the absence of
> a stay, are not enough.  The possibility that adequate
> compensatory or other corrective relief will be
> available at a later date, in the ordinary course of
> litigation, weighs heavily against a claim of
> irreparable harm.

City of Moundridge, 429 F. Supp. 2d at 127-28 (quoting Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958); Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 367 (D.C. Cir. 1999)).  Monetary injuries alone, even if they are substantial, ordinarily do not constitute irreparable harm.  Nat'l Propane Gas Ass'n v. United States Dep't of Homeland Sec., 534 F. Supp. 2d 16, 19 (D.D.C. 2008) (quoting Wis. Gas Co., 758 F.2d at 674).

When plaintiffs have requested an injunction preventing a military discharge, some courts have determined that plaintiffs must make a "much stronger showing of irreparable harm than [must be made under] the ordinary standard for injunctive relief," due to the "magnitude of the interests weighing against judicial interference with the internal affairs of the armed forces." Veitch v. Danzig, 135 F. Supp. 2d 32, 37 (D.D.C. 2001) (ruling that a U.S. Navy chaplain's loss of salary and benefits and damage to professional reputation were not irreparable injuries); Hartikka v. United States, 754 F.2d 1516, 1518 (9th Cir. 1985); Sebra v. Neville, 801 F.2d 1135, 1141 (9th Cir. 1986) (stating that "the test for injunctive relief is much more stringent for a government military employee than [is] the normal test for injunction"); Guerra v. Scruggs, 942 F.2d 270, 274 (4th Cir. 1991) (reversing a district court's decision granting a preliminary injunction prohibiting the plaintiff's discharge,

stating "[w]e believe that . . . [a] higher requirement of irreparable injury should be applied in the military context given the federal courts' traditional reluctance to interfere with military matters").

Spadone speculates that he would suffer irreparable harm absent an injunction re-enrolling him in West Point because the delay would damage his future military career and his reputation. However, a delay in completing courses from West Point does not necessarily constitute irreparable harm. Martin v. Stone, 759 F. Supp. 19, 21 (D.D.C. 1991) (stating that "the fact that the plaintiff is falling behind her peers at the Academy during the pendency of her challenge to her separation" did not constitute irreparable harm); Hamblet v. Brownlee, 319 F. Supp. 2d 422, 430 (S.D.N.Y. 2004) (holding that the possible damage to a West Point cadet's reputation and career caused by a nine-month suspension did not constitute irreparable injury). Spadone relies upon dictum in Tully v. Orr, 608 F. Supp. 1222 (E.D.N.Y. 1985),[7] that an Air Force academy cadet who was expelled right before final exams and graduation suffered irreparable harm because he "face[d] the prospect of th[e] Court granting the relief sought . . . but having his graduation and commissioning delayed to such

---

[7] Tully vacated a temporary restraining order entered three weeks earlier and denied a motion for a preliminary injunction for failing to show a likelihood of success on the merits. Id., 608 F. Supp. at 1226-27.

an extent that the damage to his future military career [would be] . . . nearly insurmountable." (Pl.'s Mem. in Supp. of Mot. for Preliminary Injunction ("Pl.'s Mem.") at 10-11.) However, the dictum in Tully seemed in tension with appellate precedent in its circuit, Phillips v. Marsh, 687 F.2d 620 (2d Cir. 1982), involving an expelled West Point cadet who had finished her final year's course work. In that case, the Second Circuit reversed a district court's decision to issue a preliminary injunction, stating that "[w]e can conceive of no irreparable harm that would accrue to [the plaintiff] in allowing her graduation to await the outcome of the trial on the merits; any damages to her from deferring her career as a military officer in that period of time would surely be compensable by monetary damages." Id. at 622. In addition, Spadone does not distinguish his situation from that of the sanctioned cadets in cases such as Martin or Hamblet, he does not explain why any delay in graduation date would not be compensable with monetary damages, and he does not provide any other evidence of irreparable injury unique to this case. Spadone has not made a sufficient showing of irreparable injury to justify a preliminary injunction.

II. SUCCESS ON THE MERITS

It is important for one seeking injunctive relief to demonstrate that he is likely to succeed on the merits, in order to justify the "'intrusion into the ordinary processes of

administration and judicial review.'" Konarski v. Donovan, 763 F. Supp. 2d 128, 132 (D.D.C. 2011) (quoting Am. Bankers Ass'n v. Nat'l Credit Union Admin., 38 F. Supp. 2d 114, 140 (D.D.C. 1999)). "Assessing the likelihood of success on the merits 'does not involve a final determination of the merits, but rather the exercise of sound judicial discretion on the need for interim relief.'" Beattie v. Barnhart, 663 F. Supp. 2d 5, 9 (D.D.C. 2009) (quoting Nat'l Org. for Women v. Dep't of Health and Human Servs., 736 F.2d 727, 733 (D.C. Cir. 1984)). To show that interference into the personnel decisions of the Superintendent is warranted, Spadone must make a very compelling case that he was denied process explicitly given to him by statute, or that the Army's decision was arbitrary or capricious. "The Court's deference to the military is at its highest 'when the military, pursuant to its own regulations, effects personnel changes through the promotion or discharge process.'" Housman v. Baratz, 916 F. Supp. 23, 28 (D.D.C. 1996) (quoting Dilley v. Alexander, 603 F.2d 914, 920 (D.C. Cir. 1979)). Judicial review of personnel decisions of the armed forces is limited to a determination of whether they were arbitrary, capricious or contrary to the Constitution, statutes, or governing regulations. Housman, 916 F. Supp. at 28 (citing Blevins v. Orr, 721 F.2d 1419, 1421 (D.C. Cir. 1983)).

Spadone argues in a mere four short paragraphs (Pl.'s Mem. at 8-9) that he has a substantial likelihood of success on the merits of his eight-count complaint because the Secretary's actions were arbitrary and capricious, failed to comply with multiple internal due process timetables for adjudicating Spadone's case, violated the Establishment Clause by forcing Spadone to recite a prayer, and wrongly triggered Spadone's active duty obligation. (Id.) The Secretary opposes, arguing that Spadone has shown no likelihood he will succeed on the merits because most of the claims in Spadone's complaint were not raised during his administrative challenge to his suspension and should be dismissed for Spadone's failure to exhaust his administrative remedies, and because the claims otherwise lack merit.

A review of the record reveals that most of the claims in the complaint that could have been raised below were not raised below. "Generally . . . issues and arguments not made before the relevant military correction board or administrative agency are deemed waived and could not be raised in a judicial tribunal." Christian v. United States, 46 Fed. Cl. 794, 802 (2000). Spadone does not refute that he raised during the administrative proceedings just one of the claims presented in his complaint, namely, a challenge to the standards used for finding that

Spadone failed the HMP program.[8]  (Def.'s Opp'n at 19; Def.'s Mem. in Supp. of Mot. for Summ. J. at 5, 8.)  Spadone cannot show a likelihood of success on waived claims.

Even considering, though, the merits of all the complaint's claims to which the preliminary injunctive relief he seeks arguably relates,[9] Spadone's showing falls short.  Count 1 alleges that the Secretary's decision to disenroll Spadone for failing to follow the requirements of the HMP violated the APA because it was arbitrary, capricious, and an abuse of discretion. Specifically, Spadone argues that the Secretary relied on undefined, nebulous concepts that were not present in West Point's regulations, such as journal entries "denying the intent" of West Point's guidelines.  (Pl.'s Mem. at 8.)  Spadone claims that the HMP regulations do not provide an ascertainable standard

---

[8] See n. 12, infra.

[9] Count 4 complains, curiously, that West Point should have separated Spadone immediately after he failed the HMP program but failed to do so, and the delay deprived Spadone of his chance to enroll in a different college or secure other employment. (Compl. ¶¶ 122-27.)  Count 8 alleges that Spadone stayed to begin his third year at West Point in reliance to his detriment upon an implied promise to let him study abroad that West Point broke, unjustly enriching the Army by requiring Spadone's services as an enlisted soldier against his wishes.  Success on these counts presumably would make Spadone eligible for money damages, not an order re-enrolling him.  Count 7 alleges that West Point forced Spadone in violation of the Establishment Clause to recite a religious prayer.  Success on that count presumably would yield an order barring forced religious prayer, not an order re-enrolling Spadone.  Spadone obeyed the challenged order to recite the prayer; his disenrollment did not stem from refusing a prayer order.

to determine whether a cadet violates the HMP, and that the Secretary abused his discretion by failing to provide Spadone with the opportunity to write extra journal entries for weeks when he was unable to write the sufficient amount. (Compl. ¶¶ 97-106.)

A decision is arbitrary or capricious under the APA if the Secretary failed to provide a reasoned explanation, failed to address reasonable arguments, or failed to consider an important aspect of the case. See Pettiford v. Sec'y of the Navy, 774 F. Supp. 2d 173, 182 (D.D.C. 2011). Here, the Secretary provided a reasoned explanation that was not close to the types of decisions considered by this court as arbitrary and capricious. Cf. Wilhelmus v. Geren, 796 F. Supp. 2d 157, 163-164 (D.D.C. 2011) (holding that the Army Board for the Correction of Military Records acted arbitrarily and capriciously when it affirmed a decision to recoup $137,630 from a cadet who was disenrolled for unintentionally failing the Cadet Physical Fitness Test because the Board ignored precedent that disallowed recoupment for failing that test); El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health and Human Serv., 300 F. Supp. 2d 32, 42-43 (D.D.C. 2004) (holding that the Secretary of Health and Human Services acted arbitrarily and capriciously when it denied malpractice insurance coverage to physicians who were situated similarly to other physicians who were granted malpractice

insurance coverage); <u>Wagner v. Geren</u>, 614 F. Supp. 2d 12, 18-20 (D.D.C. 2009) (holding that the Army Board for Correction of Military Records arbitrarily and capriciously denied the plaintiff's 20-year service retirement because when it calculated the plaintiff's service time it relied on a document that it could not produce or otherwise prove existed). While Spadone complains that the HMP lacked measurable standards for components such as journal entries, the Secretary explained that Spadone failed to comply with even unambiguous requirements of the HMP. According to the Secretary, Spadone was told to begin the HMP process before leaving West Point for the 2010 summer but he did not, he refused to wear a brass insignia as ordered, and he did not engage in the HMP for over a month after returning in the fall of 2010 until an officer directed him to do so. (<u>See</u> A.R. 21.)

In Count 2, Spadone alleges that the Secretary violated his Fifth Amendment right to due process by not providing Spadone with a hearing or an opportunity to present a defense after he was deemed to have failed the HMP and before the Secretary disenrolled him. (Compl. ¶¶ 107-110.) In general, a procedural due process violation consists of a (1) deprivation by the government, (2) of life, liberty, or property, (3) without due process of law. <u>Lightfoot v. Dist. of Columbia</u>, 273 F.R.D. 314, 319 (D.D.C. 2011) (citing <u>Propert v. Dist. of Columbia</u>, 948 F.2d

1327, 1331 (D.C. Cir. 1991)). Spadone has not shown that the Secretary deprived him of a liberty or property interest. See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). "[T]here is no protected property interest in continued military service." Wilhelm v. Caldera, 90 F. Supp. 2d 3, 8 (D.D.C. 2000); see also Hanson v. Wyatt, 552 F.3d 1148, 1158 (10th Cir. 2008). Moreover, the record shows that Spadone did receive notice in October 2010 that he was deemed to have failed the HMP[10] (A.R. 21-22), and did use an opportunity to present a defense before he was disenrolled. His attorney submitted to the West Point Superintendent in December 2010 a letter (A.R. 12-15)[11] challenging Spadone's proposed separation based upon his alleged failure to complete the HMP as "arbitrary and capricious, an abuse of discretion, and not in accordance with the law." (Id. at 12.)[12]

In Count 3, Spadone alleges that the Secretary violated Spadone's Fifth Amendment right to due process and the APA by failing to complete the cadet honor proceedings within 40 days in

---

[10] The complaint concedes as much. (Compl. ¶ 109.)

[11] The letter sought relief but did not request a hearing. (A.R. 12 ¶ 2.)

[12] Not surprisingly, Spadone's memorandum does not even discuss the allegations in Count 2 among the examples of due process violations alleged in the complaint. (Pl.'s Mem. at 9.) Nor did the letter raise any of the other claims alleged in the complaint.

violation of West Point's own internal procedures. The procedure he cites explains that "standard processing time for honor cases, under normal circumstances, is 40 days from inception through a finalized decision by the Superintendent." (Compl. ¶ 95, citing USCC PAM 15-1 ¶ 204.) As is explained above, the disenrollment decision was amply explained. Aside from the fact that Spadone did not raise this challenge below, he cites no authority for a court to override an amply explained military disenrollment decision that was announced beyond the "standard processing time . . . under normal circumstances."

Count 5 alleges that West Point wrongly advised Spadone in August 2010 that he had already begun his third year and incurred his active duty military service obligation. On its face, the advice was not wrong. Spadone had begun his third year even before he committed his first honor code violation in October 2009.

Count 6 alleges that West Point failed to advise Spadone of his right to remain silent before he was questioned about his alleged honor code violations. The record does not support his allegation. Spadone's signature, witnessed by two people, appears on two separate waivers for two separate interviews on November 18, 2009. Both waivers acknowledged that before he was questioned, he was advised of his right to a lawyer and right to remain silent, and that he understood his rights and was willing

to speak without a lawyer present. (A.R. 510-13.) In the face of this evidence, Spadone's mere assertion that he was advised of his rights only after he was questioned (Compl. ¶ 39) is not sufficient to establish a likelihood of success on the merits of this claim.

The preliminary injunctive relief Spadone seeks is re-enrollment, but he has failed to show that he is likely to succeed on the merits of the counts for which re-enrollment arguably could be the ultimate relief awarded.

III. HARM TO OTHERS; PUBLIC INTEREST

The balance of the harms and the public interest do not weigh in favor of granting an injunction. Spadone argues that the Secretary "stands to lose very little by allowing Cadet Spadone to resume his studies at West Point while this litigation is pending." (Pl.'s Mem. at 11.) The Secretary disagrees, and argues that the public would be harmed by granting Spadone's requested injunction because the Army would be forced to spend additional resources educating Spadone despite the fact that Spadone would face honor proceedings shortly after his return. (Def.'s Opp'n at 22.) The Secretary also argues that the public has an interest in West Point maintaining high standards for future Army Officers, and re-enrolling Spadone would create an irreconcilable conflict between adhering to West Point's standards and educating Spadone. (Id. at 23.) While neither

party's arguments are dispositive, the Secretary points out that at least one court has stated that "'the public has an interest, particularly in light of current events, in seeing that the Army's discretionary decision making with respect to personnel decisions is effectuated with minimal judicial interference.'" Parrish v. Brownlee, 335 F. Supp. 2d 661, 675 (E.D.N.C. 2004) (quoting Irby v. United States, 245 F. Supp. 2d 792, 798 (E.D. Va. 2003)). Even if the reasoning Parrish is not fully adopted, Spadone, at a minimum, has not shown that these factors weigh in his favor.

                    CONCLUSION AND ORDER

     Because Spadone has not shown that he will suffer irreparable injury without his requested injunctive relief, that he is likely to succeed on the merits of his claims against the defendant, or that the balance of harms and the public interest weigh in favor of his proposed injunction, it is hereby

     ORDERED that Spadone's motion for a preliminary injunction [9] be, and hereby is, DENIED.

     SIGNED this 8th day of February, 2012.


                         _____/s/_____
                         RICHARD W. ROBERTS
                         United States District Judge