**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| | ) | |
| **ALAN MATTHEW SPADONE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 11-1601 (RWR)** |
| | ) | |
| **JOHN M. MCHUGH,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alan Spadone filed this complaint against Secretary of the Army John McHugh, alleging that the Secretary's actions, including his order disenrolling Spadone from the United States Military Academy ("West Point") and directing Spadone to serve as an enlisted solider in the Army, violated the Administrative Procedures Act ("APA"), 5 U.S.C. § 702 et seq., the Due Process Clause of the Fifth Amendment, and the Establishment Clause of the First Amendment, and unjustly enriched the Army. The Secretary has moved to dismiss the complaint or for summary judgment. Because the Secretary is entitled to judgment on Spadone's APA and due process claims since Spadone received the process that was due and the Secretary did not violate the APA, and the Secretary is entitled to dismissal of the unjust enrichment claim since the United States has not waived its sovereign immunity for a claim of unjust enrichment that seeks equitable relief, the Secretary's motion

will be granted in part. However, because the Secretary has not justified dismissing the Establishment Clause claim and disputed material facts bar summary judgment on that claim, the Secretary's motion will be denied in part.

BACKGROUND

The background of this case is discussed more fully in Spadone v. McHugh, Civil Action No. 11-1601 (RWR), 2012 WL 393056, at * 1-3 (D.D.C. Feb. 8, 2012). Briefly, in July 2007, Spadone enrolled at West Point. (Compl. ¶ 13.) In February 2009, Spadone asked West Point's Dean to allow him to enroll in a study-abroad program. The Dean denied Spadone's request in September 2009, and denied reconsidering that decision in October 2009, after Spadone had started his third year of study at West Point. (Id. ¶¶ 23-24, 26.) A cadet who starts a third year of study incurs an active duty service obligation. One who leaves before then does not incur an active duty service obligation. (Id. ¶¶ 22-23.)

In November 2009, Spadone admitted that he violated West Point's honor code by committing plagiarism in writing an October 2009 essay. (Def.'s Mot. to Dis., Def.'s Stmt. of Facts ("Def.'s Stmt.") ¶¶ 8, 13.) Spadone submitted another assignment in November that his course's professor, Dr. Terri Sabatos, suspected involved dishonorable documentation. Spadone told her he had been merely careless, and he later signed two statements

denying that the second essay violated the honor code. (Def.'s Stmt. ¶¶ 15-16, 20; A.R. 403-404.) In February 2010, West Point's Commandant for Honor Matters referred Spadone to an Honor Investigative Hearing for three charges of violating the honor code: one charge of plagiarizing in the October paper, one charge of plagiarizing in the November paper, and one charge of lying to his professor about the November paper. (Def.'s Stmt. ¶ 25.)

Spadone pled guilty to plagiarizing in the October essay at an Honors Investigative Board hearing held on March 8, 2010. The Honors Investigative Board also determined that the allegations of plagiarizing in the November essay were supported by a preponderance of the evidence but the allegation of lying was not. (Compl. ¶¶ 42, 44; Def.'s Stmt. ¶¶ 31-32.)

In April 2010, Spadone was questioned about his honor code violations by a panel composed of the Commandant of Cadets, a Command Sergeant Major, five cadets from the Cadet Honor Committee, and Spadone's Tactical Officer. (Compl. ¶ 46.) According to Spadone, the Commandant of Cadets indicated during the hearing that Spadone had not properly shown contrition or accepted responsibility for the honor code violations, and ordered Spadone to stand with his body rigid in a military posture and to read aloud the "Cadet's Prayer." (Id. ¶¶ 47-48.) The prayer says in part, "O God, our Father, Thou Searcher of human hearts, help us to draw near to Thee in sincerity and

truth.  May our religion be filled with gladness and may our worship of Thee be natural. . . .  Help us . . . in doing our duty to Thee[.]"  (Id. ¶ 47.)

In May 2010, West Point's Superintendent disenrolled Spadone from West Point for the summer of 2010, delayed his graduation by one year, placed Spadone in a "suspended separation status" until graduation, and enrolled Spadone in the Honor Mentorship Program ("HMP") under specific conditions.  (Compl. ¶ 51; Def.'s Stmt. ¶ 41.)  Spadone was told to begin the HMP process before leaving West Point for the summer, but Spadone did not do so.  After returning in the fall, he did not engage in the HMP for over a month until an officer directed him to do so, and he refused to wear an HMP brass insignia as ordered.  (See A.R. 21.)

In October 2010, the Special Assistant to the Commandant for Honor Matters recommended vacating the suspension of Spadone's separation from West Point because Spadone had not submitted journal entries that met the requirements of the HMP.  (Compl. ¶ 65; A.R. 23.)  In December 2010, the West Point Superintendent suspended Spadone and placed him on an authorized leave of absence without pay pending the Army's final decision on his disenrollment.  (Compl. ¶ 75.)  In August 2011, Spadone learned that the Secretary signed orders disenrolling Spadone from West Point and ordering Spadone to report in October 2011 for two years on active duty as an enlisted soldier.  (Id. ¶¶ 82, 86.)

Spadone filed his complaint for injunctive relief in this action in September 2011 challenging the Secretary's actions as arbitrary, capricious and in violation of due process. He also alleged that ordering him to read aloud the Cadet's Prayer violated the Establishment Clause of the First Amendment, and that the delay in denying his study abroad enrollment unjustly enriched the Army by triggering his active duty military service obligation. In addition to back pay, his complaint seeks full reinstatement at West Point and expungement of all records of his HMP failure, or, in the alternative, an order requiring the Secretary to discharge Spadone from West Point without requiring a period of enlisted military service. He also seeks any other relief that is just and proper. (Compl. ¶ 150.)[1]

The Secretary has now moved to dismiss or for summary judgment on all counts of Spadone's complaint. Spadone opposes.

DISCUSSION

"'Summary judgment may be appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law.'" Pueschel v. Nat'l Air Traffic Controllers Ass'n, 772 F. Supp. 2d 181, 183 (D.D.C. 2011) (quoting Bonaccorsy v. Dist. of Columbia, 685 F. Supp. 2d 18, 22 (D.D.C. 2010)

_____

[1] The Secretary has changed Spadone's reporting date from October 10, 2011 to July 23, 2012. (See Notice of Pl.'s Reporting Status at 2.)

(citing Fed. R. Civ. P. 56(c)).  "'In considering a motion for summary judgment, [a court is to draw] all 'justifiable inferences' from the evidence . . . in favor of the nonmovant.'" Pueschel, 772 F. Supp. 2d at 183 (quoting Cruz-Packer v. Dist. of Columbia, 539 F. Supp. 2d 181, 189 (D.D.C. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "The relevant inquiry 'is the threshold inquiry of determining whether there is a need for a trial - - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Single Stick, Inc. v. Johanns, 601 F. Supp. 2d 307, 312 (D.D.C. 2009) (quoting Anderson, 477 U.S. at 250) (overruled on other grounds by Prime Time Int'l Co. v. Vilsack, 599 F.3d 678 (D.C. Cir. 2010)).  A genuine issue is present in a case where the "evidence is such that a reasonable jury could return a verdict for the non-moving party," a situation wholly distinct from a case where the evidence is "so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 248, 252.

"In general, courts tread 'lightly on the military domain, with scrupulous regard for the power and authority of the military establishment to govern its own affairs within the broad confines of constitutional due process.'"  Spadone, 2012 WL

393056, at *3 (quoting <u>Friedberg v. Resor</u>, 453 F.2d 935, 937 (2d Cir. 1971)).

> To show that interference into the personnel decisions of the Superintendent is warranted, Spadone must make a very compelling case that he was denied process explicitly given to him by statute, or that the Army's decision was arbitrary or capricious. "The Court's deference to the military is at its highest 'when the military, pursuant to its own regulations, effects personnel changes through the promotion or discharge process.'" <u>Housman v. Baratz</u>, 916 F. Supp. 23, 28 (D.D.C. 1996) (quoting <u>Dilley v. Alexander</u>, 603 F.2d 914, 920 (D.C. Cir. 1979)). Judicial review of personnel decisions of the armed forces is limited to a determination of whether they were arbitrary, capricious or contrary to the Constitution, statutes, or governing regulations. <u>Housman</u>, 916 F. Supp. at 28 (citing <u>Blevins v. Orr</u>, 721 F.2d 1419, 1421 (D.C. Cir. 1983)).

<u>Spadone</u>, 2012 WL 393056, at *5.

I.   COUNTS 1-6: APA AND DUE PROCESS

The APA "requires courts to 'hold unlawful and set aside agency action, findings, and conclusions' that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" <u>Wilhelmus v. Geren</u>, 796 F. Supp. 2d 157, 160 (D.D.C. 2011) (quoting 5 U.S.C. § 706(2)(A)). A decision is arbitrary or capricious under the APA if an agency failed to provide a reasoned explanation, failed to address reasonable arguments, or failed to consider an important aspect of the case. <u>See</u> <u>Pettiford v. Sec'y of the Navy</u>, 774 F. Supp. 2d 173, 181-82 (D.D.C. 2011). "'[T]he scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute

its judgment for that of the agency.'" Pettiford, 774 F. Supp. 2d at 182 (quoting Motor Vehicle Mfrs. Ass'n v. State Farm, 463 U.S. 29, 43 (1983).[2]

Count 1 of Spadone's complaint alleges that the Secretary's decision to disenroll Spadone for failing to follow the requirements of the HMP violated the APA because it was arbitrary, capricious, and an abuse of discretion. Specifically, Spadone argues that the Secretary relied on undefined, nebulous concepts that were not present in West Point's regulations, such as journal entries "denying the intent" of West Point's guidelines. (Pl.'s Mem. at 8.) Spadone also asserts that the HMP regulations do not provide an ascertainable standard to determine whether a cadet violates the HMP, and that the

---

[2] Spadone may have waived the claims found in Counts 2 through 6 of the complaint. As was mentioned in the previous opinion,

> [a] review of the record reveals that most of the claims in the complaint that could have been raised below were not raised below. "Generally . . . issues and arguments not made before the relevant military correction board or administrative agency are deemed waived and could not be raised in a judicial tribunal." Christian v. United States, 46 Fed. Cl. 794, 802 (2000). Spadone does not refute that he raised during the administrative proceedings just one of the claims presented in his complaint, namely, a challenge to the standards used for finding that Spadone failed the HMP program. (Def.'s Opp'n at 19; Def.'s Mem. in Supp. of Mot. for Summ. J. at 5, 8.)

Spadone, 2012 WL 393056, at *5. However, even if Spadone has not waived the claims in Counts 2 through 6, judgment will be entered against him for the reasons discussed below.

Secretary abused his discretion by failing to provide Spadone with the opportunity to write extra journal entries for weeks when he was unable to write the sufficient amount. (Compl. ¶¶ 97-106.)

However, the Secretary provided a reasoned explanation that offered fair grounds for his decision.[3] See Chamness v. McHugh, 814 F. Supp. 2d 7, 14 (D.D.C. 2011) (finding that a decision of the Army Board for Correction of Military Records was not arbitrary or capricious since it "minimally contain[ed] a rational connection between the facts and the choice made"). Although Spadone argues that the HMP lacked measurable standards for components such as journal entries, the Secretary explained that Spadone failed to comply with even unambiguous requirements of the HMP. Spadone was told to begin the HMP process before

---

[3] That is not always the case with agency decisions. Cf. Wilhelmus, 796 F. Supp. 2d at 163-164 (holding that the Army Board for the Correction of Military Records acted arbitrarily and capriciously when it affirmed a decision to recoup $137,630 from a cadet who was disenrolled for unintentionally failing the Cadet Physical Fitness Test because the Board ignored precedent that disallowed recoupment for failing that test); El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health and Human Serv., 300 F. Supp. 2d 32, 42-43 (D.D.C. 2004) (holding that the Secretary of Health and Human Services acted arbitrarily and capriciously when it denied malpractice insurance coverage to physicians who were situated similarly to other physicians who were granted malpractice insurance coverage); Wagner v. Geren, 614 F. Supp. 2d 12, 18-20 (D.D.C. 2009) (holding that the Army Board for Correction of Military Records arbitrarily and capriciously denied the plaintiff a 20-year service retirement because when it calculated the plaintiff's service time, it relied on a document that it could not produce or otherwise prove existed).

leaving West Point for the 2010 summer but he did not, he failed to engage in the HMP for over a month after returning in the fall of 2010 until an officer directed him to do so, and he refused to wear a brass insignia as ordered. It was not arbitrary or capricious for the military to sanction such misbehavior, and second-guessing the sanction's severity is not within the limited purview of judicial review of the military's personnel decisions.

Count 2 alleges that the Secretary violated Spadone's Fifth Amendment right to due process by not providing Spadone with a hearing or an opportunity to present a defense after he was deemed to have failed the HMP and before the Secretary disenrolled him. (Compl. ¶¶ 107-110.) In Count 3, Spadone alleges that the Secretary violated his Fifth Amendment right to due process and the APA by failing to complete the cadet honor proceedings within 40 days in violation of West Point's own internal procedures. The procedure he cites explains that "standard processing time for honor cases, under normal circumstances, is 40 days from inception through a finalized decision by the Superintendent." (Id. ¶ 95, citing USCC PAM 15-1 ¶ 204.) In Count 4, Spadone asserts that the Secretary violated Spadone's Fifth Amendment right to due process and the APA by failing to separate him immediately after he failed the HMP program, and the delay deprived Spadone of his chance to enroll

in a different college or secure other employment. (Compl. ¶¶ 122-27.)

In general, a procedural due process violation consists of a (1) deprivation by the government, (2) of life, liberty, or property, (3) without due process of law. Lightfoot v. Dist. of Columbia, 273 F.R.D. 314, 319 (D.D.C. 2011) (citing Propert v. Dist. of Columbia, 948 F.2d 1327, 1331 (D.C. Cir. 1991)).

Spadone has shown neither that the Secretary deprived him of a liberty or property interest, nor that the process he received was inadequate. See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). "[T]here is no protected property interest in continued military service." Wilhelm v. Caldera, 90 F. Supp. 2d 3, 8 (D.D.C. 2000); see also Hanson v. Wyatt, 552 F.3d 1148, 1158 (10th Cir. 2008). In addition, the record shows that Spadone received notice in October 2010 that he was deemed to have failed the HMP[4] (A.R. 21-22), and that Spadone used his opportunity to present a defense before he was disenrolled. His attorney submitted to the West Point Superintendent in December 2010 a letter (A.R. 12-15)[5] challenging Spadone's proposed separation based upon his alleged failure to complete the HMP as "arbitrary and capricious, an abuse of discretion, and

---

[4] The complaint concedes as much. (Compl. ¶ 109.)

[5] The letter sought relief but did not request a hearing. (A.R. 12 ¶ 2.)

not in accordance with the law." (Id. at 12.) The Secretary's disenrollment decision was amply explained to Spadone. Aside from the fact that Spadone did not raise this challenge below, he cites no authority for a court to override an amply explained military disenrollment decision that was announced beyond the "standard processing time . . . under normal circumstances." Nor can it be true that according Spadone due process after he failed the HMP program, rather than immediately separating him without it, violates due process or the APA.

Count 5 claims that the Secretary violated Spadone's Fifth Amendment right to due process and the APA by wrongly advising Spadone in August 2010 that he had already begun his third year and incurred his active duty military service obligation. (Compl. ¶¶ 128-134.) Count 6 asserts that the Secretary violated Spadone's Fifth Amendment right to due process and the APA by failing to advise Spadone of his right to remain silent before he was interviewed about his first honor code violation. (Id. ¶¶ 38-39, 135-138.)

The record shows that the Secretary is entitled to judgment on Counts 5 and 6. The advice that Spadone complains of in Count 5 was not objectively wrong, as Spadone had begun his third year even before he committed his first honor code violation in October 2009. Similarly, Spadone has failed to rebut the record evidence that the interview in which he was not initially

informed of his right to remain silent was not one that required a prior advice of rights.[6]  The professor to whom Spadone submitted the plagiarized essay conducted an "approach for clarification . . . to determine if there [was] a reasonable explanation for the situation. . . .  There is no requirement to provide a rights warning during an approach for clarification." (Def.'s Stmt. ¶¶ 11-12.)[7]  Therefore, judgment will be entered for the Secretary on Counts 1 through 6.

## II.   COUNT 7: ESTABLISHMENT CLAUSE

Count 7 alleges that the Secretary violated Spadone's rights under the Establishment Clause when, during the April 2010

---

[6] The caption of Count 6 and paragraph 138 within that Count refer to questioning in connection with a single honor code violation, not multiple alleged violations.  Paragraph 38 of the complaint, which Count 6 incorporates by reference (Compl.¶ 135), specifies that the questioning occurred during the interview conducted by Major Anthony George, Dr. Terri Sabatos, and Cadet Adam J. Bishop.  Sworn statements by Dr. Sabatos, Cadet Bishop and Major George reflect that the contact occurred on November 6, 2009 and was "an approach for clarification" about the October essay.  (A.R. at 575, 580, 601.)  The three met in advance to review the proper way to conduct an approach for clarification to assure that it was not an accusatory session (id. at 580, 601), and Major George told Spadone during the interview that this was not an accusation, but a chance to clarify the similarities between his paper and a journal article. (Id. at 575, 581.)

[7] Even if Dr. Sabatos' interview regarding the November essay were at issue, the Secretary's dismissal decision was based upon a full record that included careful examination and assessment of this interview as an approach for clarification that required no prior advice of rights.  (See A.R. 70-106, 196-98.)  Spadone has provided no basis for substituting a judicial assessment for the Secretary's.

hearing, the Commandant of Cadets forced Spadone to recite a religious prayer. (Compl. ¶¶ 139-144.) The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Supreme Court has explained that "the purpose of the Establishment and Free Exercise Clauses of the First Amendment is 'to prevent, as far as possible, the intrusion of either [the church or the state] into the precincts of the other.'" Lynch v. Donnelly, 465 U.S. 668, 672 (1984) (citing Lemon v. Kurtzman, 403 U.S. 602, 614 (1971)). "For decades, the Supreme Court has tested the constitutionality of state action under the Establishment Clause pursuant to a standard first articulated in Lemon. . . ." Newdow v. Bush, 355 F. Supp. 2d 265, 283 (D.D.C. 2005). The Lemon test upholds a government's action only if it has a "secular . . . purpose" and its "principal or primary effect . . . neither advances nor inhibits religion." Lemon, 403 U.S. at 612-13. And the Constitution guarantees that government must not coerce anyone to support or participate in religion or its exercise. Lee v. Weisman, 505 U.S. 577, 587 (1992). For example, military service academies violate the Establishment Clause when they force their students to attend religious services. See Anderson v. Laird, 466 F.2d 283, 290 (D.C. Cir. 1972).

The Secretary does not argue that a compelled monotheistic prayer has a secular purpose or that it does not advance

religion. Instead, the Secretary argues that Spadone lacks standing to assert an Establishment Clause claim.

> "[A] showing of standing is an essential and unchanging predicate to any exercise of [a court's] jurisdiction." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) (internal quotation marks omitted). In order for a plaintiff to establish standing to bring a constitutional claim, Article III requires that the plaintiff demonstrate (1) that he has suffered "an injury in fact" that is "(a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical," (2) that there exists "a causal connection between the injury and the conduct complained of," that is, that the injury is "fairly traceable to the challenged action of the defendant," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted).

Urban Health Care Coalition v. Sebelius, Civil Action No. 06-2220 (RWR), 2012 WL 1035392, at *3 (D.D.C. March 29, 2012).

"An alleged Establishment Clause injury is sufficiently concrete and particularized when the plaintiff sees or hears a government-sponsored religious display or speech that offends his or her beliefs." Newdow v. Roberts, 603 F.3d 1002, 1014 (D.C. Cir. 2010) (Kavanaugh, J., concurring) (citing In re Navy Chaplaincy, 534 F.3d 756, 764 (D.C. Cir. 2008)). Spadone, of course, has alleged not that he merely witnessed offensive government-sponsored religious speech, but that the government coerced him into uttering the government-sponsored religious speech. He has sufficiently alleged an injury in fact.

In claiming that Spadone has failed to establish that his injury was fairly traceable to the Commandant's order forcing Spadone to recite the prayer, the Secretary misidentifies the injury as Spadone's dismissal (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def's Mem.") at 39-40), a claimed due process and APA injury. It is beyond debate that Spadone's claimed Establishment Clause injury is fairly traceable to the Commandant's challenged order. Likewise, in arguing that Spadone's reinstatement will not redress the Establishment Clause injury, even the Secretary acknowledges that reinstatement is not the relevant relief. (Def.'s Mem. at 41 ("the proper remedy is an injunction precluding" action violating the Establishment Clause).) Spadone filed a complaint for injunctive relief that prays for relief that is "just and proper." (Compl. ¶ 150(f).) Any Establishment Clause injury established here likely would be redressed by a proper injunction barring forced religious prayer. Thus, Spadone has standing to challenge the Secretary's alleged Establishment Clause violation.

The Secretary's argument that Spadone waived his Establishment Clause claim asserts that granting the relief of setting aside the decision dismissing Spadone from West Point would improperly inject the judiciary into discretionary personnel and disciplinary decisions. (Def.'s Mem. at 9-10.) Here, too, the Secretary's argument is misfocused upon relief

that would not flow from a proven Establishment Clause claim, and his explanation presents no cogent reason for dismissing Count 7. Finally, in seeking summary judgment on Count 7, the Secretary suggests a dispute about a material fact that would bar summary judgment. While Spadone alleges that the Commandant forced Spadone to recite a religious prayer, the Secretary asserts that there is no indication in the administrative record that this occurred. (Def.'s Mem. at 40.) The Secretary's motion, then, will be denied as to Count 7.

III. COUNT 8: UNJUST ENRICHMENT

Count 8 alleges that the Secretary would be unjustly enriched if he were allowed to force Spadone to serve as an enlisted soldier. (Compl. ¶¶ 145-149.) The Secretary argues that Count 8 should be dismissed for lack of jurisdiction because the United States has not waived its sovereign immunity for claims of unjust enrichment that seek equitable relief as opposed to monetary damages. (Id. at 23.)

"In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court 'accepts as true all of the factual allegations contained in the complaint[.]'" Teton Historic Aviation Found. v. U.S. Dep't of Def., 686 F. Supp. 2d 75, 78 (D.D.C. 2010) (quoting Peter B. v. CIA, 620 F. Supp. 2d 58, 67 (D.D.C. 2009)) (some internal quotations omitted). "The plaintiff bears the burden of establishing that the court has

jurisdiction over a claim."  Teton Historic Aviation Foundation,
686 F. Supp. 2d at 78.

"The Federal Government cannot be sued without its consent."
United States v. Navajo Nation, 129 S. Ct. 1547, 1551 (2009).
The government's consent to be sued cannot be inferred or
"'implied but must be unequivocally expressed.'"  Franconia
Assocs. v. United States, 536 U.S. 129, 141 (2002) (quoting
United States v. King, 395 U.S. 1, 4 (1969)); Strong-Fisher v.
Lahood, 611 F. Supp. 2d 49, 53 (D.D.C. 2009).  "'Jurisdiction
over any suit against the Government requires a clear statement
from the United States waiving sovereign immunity . . . together
with a claim falling within the terms of the waiver.'"
Cartwright Int'l Van Lines, Inc. v. Doan, 525 F. Supp. 2d 187,
194 (D.D.C. 2007) (quoting United States v. White Mountain Apache
Tribe, 537 U.S. 465, 472 (2003)).  Courts lack subject matter
jurisdiction to hear claims filed against the government that do
not fall within the scope of a waiver of sovereign immunity.  See
P&V Enterprises v. United States Army Corps of Eng'rs, 516 F.3d
1021, 1026-1027 (D.C. Cir. 2008); Ballard v. Holinka, 601 F.
Supp. 2d 110, 121 (D.D.C. 2009) (noting that sovereign immunity
is jurisdictional in nature).

The Little Tucker Act, 28 U.S.C. § 1346(a)(2), provides
jurisdiction in federal district courts for claims seeking less
than $10,000 in monetary damages against the United States

founded upon express or implied contracts. However, the Little Tucker Act does not provide a waiver of sovereign immunity for claims against the United States where a party seeks equitable relief, as opposed to monetary relief, against the United States for breach of a contract. Wright v. Foreign Serv. Griev. Bd., 503 F. Supp. 2d 163, 178 (D.D.C. 2007). A plaintiff's request for back pay does not transform "what is 'in essence' a claim for equitable relief into a claim for money damages." Wright, 503 F. Supp. 2d at 179.

Here, Spadone's claim for unjust enrichment fails to allege a viable waiver of sovereign immunity, or, frankly, any viable jurisdictional basis. Spadone's complaint is, in essence, a claim for equitable relief. He seeks an order setting aside his disenrollment and reinstating him as a student at West Point, or an order requiring the Secretary to discharge Spadone from West Point without requiring him to serve a period of enlisted service. While the complaint does ask for "monetary damages for back pay no greater than $10,000" (Compl. ¶ 150(d)), Spadone has abandoned that request. His opposition asserts that he does not seek monetary damages for Count 8; rather, he "is requesting equitable relief to prevent Defendant from unjust enrichment in the form of Cadet Spadone's service as an enlisted soldier." (Pl.'s Opp'n at 25.) In his opposition, Spadone invokes the APA's waiver of sovereign immunity, but Spadone does not provide

any support for the proposition that an action that would unjustly enrich the Secretary would be actionable as arbitrary or capricious under the APA.

CONCLUSION

Spadone has not established that his suspension and disenrollment from West Point violated the APA or his right to due process, and Spadone failed to demonstrate a waiver of sovereign immunity for his claim of unjust enrichment. However, summary judgment is premature on Spadone's Establishment Clause claim, and the Secretary's faulty reasoning does not warrant dismissing that claim. Therefore, it is hereby

ORDERED that the defendant's motion [14] to dismiss or for summary judgment be, and hereby is, GRANTED in part and DENIED in part. Count 8 of Spadone's complaint will be dismissed, and judgment will be entered in favor of the Secretary on Counts 1 through 6. The remainder of the motion will be denied. It is further

ORDERED that the plaintiff's motions [18] [21] for a hearing be, and hereby are, DENIED as moot.

SIGNED this 6th day of June, 2012.

                              _____/s/_____
                              RICHARD W. ROBERTS
                              United States District Judge